**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| NIKHIL DHIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-cv-00219-VAB |
| | ) | |
| CARLYLE GROUP EMPLOYEE CO., et al., | ) | April 15, 2016 |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
PARTIAL MOTION TO DISMISS FOR LACK OF PERSONAL
<u>JURISDICTION AND FOR FAILURE TO STATE A CLAIM</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT ........................................................................................................................ 3

I.    This Court Lacks Personal Jurisdiction over Mr. Zuech. ........................................... 3

    A.    The Connecticut Long-Arm Statute Does Not Reach Mr. Zuech ........................... 4

    B.    Asserting Personal Jurisdiction Over Mr. Zuech in Connecticut Does Not
        Comport with the Requirements of Due Process. ................................................... 6

II.   Mr. Dhir Fails to State a Claim for Retaliatory Discharge ....................................... 7

    A.    Mr. Dhir Failed to Exhaust His Administrative Remedies as To His
        Sarbanes-Oxley Act Claim Against Mr. Zuech and The Carlyle Group ............... 8

    B.    Mr. Dhir Did Not Engage in Protected Activity for Purposes of the
        Connecticut Whistleblower Statute ........................................................................ 10

III.  Mr. Dhir's Bonus-Related Claims Should Be Dismissed ........................................ 11

    A.    The New York Choice of Law Provision in Mr. Dhir's Employment
        Agreement Governs this Dispute ........................................................................... 11

    B.    Mr. Dhir Fails To State a Claim for Breach of Contract ...................................... 12

    C.    Mr. Dhir Fails to State a Claim for Unpaid Wages ............................................... 14

    D.    Mr. Dhir Fails To State a Claim for Fraud ........................................................... 16

CONCLUSION .................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Am. Wholesalers Underwriting, Ltd. v. Am. Wholesale Ins. Grp., Inc.*, 312 F.
    Supp. 2d 247 (D. Conn. 2004) ........................................................................4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................8, 15

*Bader v. Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397 (S.D.N.Y. 2011) .........................18

*Baraliu v. Vinya Capital, L.P.*, 765 F. Supp. 2d 289 (S.D.N.Y. 2011)...........................14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................7

*Bensusan Rest. Corp. v. King*, 126 F.3d 25 (2d Cir. 1997) ..........................................4

*Bozeman v. Per-Se Tech. Inc.*, 456 F. Supp. 2d 1282 (N.D. Ga. 2006)...........................9

*Bridges v. McDonald's Corp.*, No. 09-CV-1880, 2009 WL 5126962 (N.D. Ill.
    Dec. 21, 2009)...........................................................................................9

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13 (2d Cir.
    1996) .......................................................................................................16

*Buckman v. Calyon Sec. (USA) Inc.*, 817 F. Supp. 2d 322 (S.D.N.Y. 2011)...............................13

*Caro v. Fid. Brokerage Servs.*, No. 3:14-cv-01028, 2015 WL 1975463 (D. Conn.
    Apr. 30, 2015)......................................................................................5, 6, 7

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002).....................................11

*Datto Inc. v. Braband*, 856 F. Supp. 2d 354 (D. Conn. 2012).......................................15

*Delaney v. Bank of Am. Corp.*, 908 F. Supp. 2d 498 (S.D.N.Y. 2012), *aff'd*, 766
    F.3d 163 (2d Cir. 2014)...............................................................................13

*Deutsche Asset Mgmt., Inc. v. Callaghan*, No. 01 Civ. 4426 CBM, 2004 WL
    758303 (S.D.N.Y. Apr. 7, 2004)..................................................................17

*E. Point Sys., Inc. v. Steven Maxim, S2k, Inc.*, ___ F. Supp. 3d ___, No. 3:13-cv-
    00215-VAB, 2015 WL 5595399 (D. Conn. Sept. 21, 2015) ...........................16, 17

*Estate of Martinez v. Yavorcik*, 455 F. Supp. 2d 115 (D. Conn. 2006) .........................7

*Greene v. Sha-Na-Na*, 637 F. Supp. 591 (D. Conn. 1986) ............................................6

*Greiner v. Simkovic*, No. 3:08-cv-190, 2008 WL 2064773 (D. Conn. May 13,
    2008) ...................................................................................................4, 6

*Hanna v. WCI Cmtys., Inc.*, No. 04-80595, 2004 U.S. Dist. LEXIS 25652 (S.D. Fla. Nov. 18, 2004) ........................................................................................................9

*Harrell v. Primedia, Inc.*, No. 02-cv-2893 (JSM), 2003 WL 21804840 (S.D.N.Y. Aug. 6, 2003) ...........................................................................................................18

*Hunter v. New York City Health & Hosp. Corp.*, No. 13–CV–2659 (SLT)(VVP), 2015 WL 1527646 (E.D.N.Y. Mar. 31, 2015) ...........................................................8

*Indus. Window Corp. v. Fed. Ins.*, 609 F. Supp. 2d 329 (S.D.N.Y. 2009) ....................14

*Int'l Paper Co. v. Suwyn*, 978 F. Supp. 506 (S.D.N.Y. 1997) ........................................16

*Int'l Shoe Co. v. State of Washington*, 326 U.S. 310 (1945) ............................................4

*Karagozian v. Luxottica Retail N. Am.*, No. 3:13-cv-1028 (VAB), 2015 WL 7451151 (D. Conn. Nov. 23, 2015) ...............................................................................10

*Levi v. Anheuser-Busch Co.*, No. 08-00398-CV-W-RED, 2008 WL 4816668 (W.D. Mo. Oct. 27, 2008), *aff'd per curiam*, 360 F. App'x 708 (8th Cir. 2010) ......................9

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155 (2d Cir. 2012) (per curiam)..................................................................................................................12

*Lorber v. Winston*, 962 F. Supp. 2d 419 (E.D.N.Y. 2013) .............................................17

*LucidRisk, LLC v. Ogden*, 615 F. Supp. 2d 1 (D. Conn. 2009) ...........................4, 5, 6, 7

*McMahon v. Chubb Grp. of Ins.*, 553 F. App'x 85 (2d Cir. 2014) .................................15

*Montanez v. D&D Auto, LLC*, No. 3:15-cv-397 (VAB), 2016 WL 1254199 (D. Conn. Mar. 29, 2016) .....................................................................................................17

*Odyssey Reinsurance Co. v. Cal-Regent Ins. Servs. Corp.*, 123 F. Supp. 3d 343, 350 (D. Conn. 2015) ...................................................................................................12

*Savin v. Ranier*, 898 F.2d 304 (2d Cir. 1990) .................................................................7

*Shields v. CityTrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) ............................17, 18

*Smith v. Corning, Inc.*, No. 06-CV-6516 CJS, 2007 WL 2120375 (W.D.N.Y. July 23, 2007) ......................................................................................................................9

*Smith v. Psych. Sol. Inc.*, No. 08-cv-3, 2009 WL 903624 (N.D. Fla. Mar. 31, 2009) ............................................................................................................................9

*Tatum v. Oberg*, No. 3:08-cv-1251 (JCH), 2009 WL 5066812 (D. Conn. Dec. 18, 2009) ........................................................................................................................16, 17

*TicketNetwork, Inc. v. Darbouze*, No. 3:15-cv-237 (VAB), ___ F. Supp. 3d ___, 2015 WL 5595486 (D. Conn. Sept. 22, 2015) ...................................................................11

*Travel Servs. Network, Inc. v. Presidential Fin. Corp.*, 959 F. Supp. 135 (D. Conn. 1997).........................................................................................................................12

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) ..............................................................................6, 7

*Willis v. VIE Fin. Grp., Inc.*, No. Civ.A. 04-435, 2004 WL 1774575 (E.D. Pa. Aug. 6, 2004) ..................................................................................................................8

## STATE CASES

*Duffy v. RMSCO, Inc.*, 825 N.Y.S.2d 861, 34 A.D.3d 1285 (N.Y. App. Div. 2006) ...................15

*Elgar v. Elgar*, 679 A.2d 937, 238 Conn. 839 (Conn. 1996)...........................................................12

*Hunter v. Deutsche Bank AG, N.Y. Branch*, 866 N.Y.S.2d 670, 56 A.D.3d 274 (N.Y. App. Div. 2008) .........................................................................................13

*Kaplan v. Capital Co. of Am. LLC*, 747 N.Y.S.2d 504, 298 A.D.2d 110 (N.Y. App. Div. 2002) ...........................................................................................................18

*Smalley v. Dreyfus Corp.*, 832 N.Y.S.2d 157, 40 A.D.3d 99 (N.Y. App. Div. 2007), *rev'd in part on other grounds*, 853 N.Y.S.2d 270, 10 N.Y.3d 55 (N.Y. 2008) ...............................................................................................................13

*Sturm v. Harb Dev., LLC*, 298 Conn. 124, 2 A.3d 859 (2010)....................................................16

*Tierney v. Capricorn Investors, L.P.*, 592 N.Y.S.2d 700, 189 A.D.2d 629 (N.Y. App. Div. 1993) .........................................................................................................14

## OTHER AUTHORITIES

12 N.Y.C.R.R. § 190 .....................................................................................................................15

15 U.S.C. § 78u-6(h)(1)(B)..............................................................................................................8

18 U.S.C. § 1514A.........................................................................................................................8, 9

Conn. Gen. Stat. Ann. § 31-51m...............................................................................................8, 10

Conn. Gen. Stat. Ann. § 52-59b...............................................................................................4, 5, 6

Conn. Gen. Stat. § 31-71a(3) .........................................................................................................14

Federal Rule of Civil Procedure 9(b)........................................................................................16, 17

N.Y. Gen. Oblig. Law § 15-301(1).................................................................................................18

## INTRODUCTION[1]

Along with most of his colleagues, Plaintiff Nikhil Dhir was let go from his position at Vermillion Asset Management, LLC ("VAM")[2] due to a business downturn.  Mr. Dhir worked for VAM as a Portfolio Manager for the Viridian Fund, Ltd. ("Viridian"), an investment fund managed by VAM.  Over a span of two years, from 2013 to 2015, Viridian's assets under management declined approximately 93%.  Unsurprisingly, due to this considerable decline in assets under management, VAM had no business choice but to significantly reduce the number of investment staff it employed.  Thus, during this time period, the number of portfolio managers employed at VAM decreased from approximately thirteen to just two.  Mr. Dhir was among the several portfolio managers who were let go.

Mr. Dhir is now attempting to cast himself as a whistleblower, asserting various claims with respect to his employment in an effort to claim that his termination, unlike those of many of his colleagues, was somehow based on alleged retaliation, and not the state of the fund.  Of note, Mr. Dhir, during his employment, never complained even anonymously to the SEC, nor any government agency, nor his employer's whistleblower complaint hotline.  Mr. Dhir has named six defendants, two of which are not similarly situated with respect to the issues raised in this motion.  Specifically, the complaint against Christopher Zuech must be dismissed in its entirety for lack of personal jurisdiction.  The allegations relating to the Sarbanes-Oxley Act must be

---

[1] The proper venue for this matter in light of the forum selection clause is the subject of a separate motion, Defendants' Motion to Transfer Venue, filed contemporaneously with the instant Motion.  To the extent this Court grants Defendants' Motion to Transfer, it need not address this Motion.

[2] As of August 26, 2015, VAM's name was changed to Carlyle Commodity Management L.L.C., but for ease of reference, Defendants refer to it as VAM in this motion.

dismissed against Mr. Zuech and The Carlyle Group because Mr. Dhir failed to exhaust his administrative remedies against these defendants.

With respect to all Defendants, the majority of Mr. Dhir's claims should be dismissed for failing to state a claim. Mr. Dhir cannot sustain a claim for retaliatory termination under the Connecticut Whistleblower Statute because he did not report any purported wrongdoing to a public agency until several months *after* his termination. In addition, Mr. Dhir's common law claims for breach of contract and fraud do not meet the requirements of New York law, which is the governing law under his employment agreement. Finally, the plain language of that agreement establishes that the bonus claimed by Mr. Dhir was entirely discretionary, and thus Mr. Dhir cannot pursue recovery of any bonus he claims to have been orally promised during 2014.

## STATEMENT OF FACTS

VAM, founded in 2005 by Defendants Andrew Gilbert and Christopher Nygaard, serves as investment adviser to a variety of funds that invest in a range of commodities-based instruments. Compl. ¶¶ 17, 19. On July 9, 2012, VAM sent Mr. Dhir an Offer Letter offering him the position of Portfolio Manager — Oil Products at VAM starting August 2, 2012. *See* Employment Agreement (Ex. 1) at 11.[3] The Offer Letter indicated Mr. Dhir's salary would be $190,000 annually, and "[t]he amount of any discretionary bonus, if any, will depend upon the Company's assessment of [his] performance, the performance of VAM and the funds as a whole." *Id.* The letter made clear that the offer was contingent upon, among other things, Mr.

---

[3] "Employment Agreement" collectively refers to the October 1, 2012 letter from The Carlyle Group Employee Co., L.L.C., to Mr. Dhir, which attached and incorporated by reference (among other documents) the July 9, 2012 Offer Letter from VAM to Mr. Dhir, and the Restrictive Covenant and Work Made for Hire Agreement with VAM that Mr. Dhir signed on August 2, 2012.

Dhir's execution of a Restrictive Covenant and Work Made for Hire Agreement. *See id.* Mr. Dhir signed and returned the Offer Letter on July 11, 2012. *Id.* at 12. On August 2, 2012, Mr. Dhir and VAM entered into the Restrictive Covenant and Work Made for Hire Agreement. *See* Employment Agreement at 14–20.

By letter dated October 1, 2012, The Carlyle Group Employee Co., L.L.C. provided written notice to Mr. Dhir that TC Group L.L.C., d/b/a The Carlyle Group, would be acquiring a controlling interest in VAM and it asked Mr. Dhir to agree to change his employer accordingly. *See* Employment Agreement at 1. Mr. Dhir returned a signed copy of the letter acknowledging his agreement to its terms. *Id.* at 5.

Mr. Dhir alleges he was terminated by VAM in January 2015. Compl. ¶ 54. On July 24, 2015, he filed a claim with the United States Department of Labor alleging wrongful termination. *Id.* ¶ 16; *see* Dep't of Labor Compl. (Ex. 2). That complaint named only Carlyle Group Employee Co., Vermillion Asset Management, Chris Nygaard, and Andrew Gilbert as defendants. Dep't of Labor Compl. at 1. The Department of Labor did not make any findings regarding Mr. Dhir's claim within 180 days, after which Mr. Dhir opted to proceed in court. Compl. ¶ 16. This suit followed.

## ARGUMENT

### I.     This Court Lacks Personal Jurisdiction over Mr. Zuech.

Christopher Zuech joined VAM as Chief Operating Officer in December 2005. See Zuech Add. (Ex. 5) ¶ 9. Currently, he is a Partner and Chief Operating Officer of Carlyle Commodity Management, L.L.C. *Id.* ¶ 4. Mr. Zuech is a resident of the Commonwealth of Pennsylvania, living at 3 Milton Drive, Yardley, Pennsylvania 19067, where he has lived since approximately 1993. *See* Zuech Aff. (Ex. 3) ¶ 2. Mr. Zuech does not, nor has he ever, owned any real property in the State of Connecticut. *Id.* ¶ 5. As Mr. Dhir concedes, Mr. Zuech, along

3

with the other individual defendants, worked out of the New York City offices of VAM and Carlyle during the relevant time period.  *See* Compl. ¶ 7.  Currently, Mr. Zuech works at 520 Madison Avenue, 38th Floor, New York, New York 10022.  *See* Zuech Aff. ¶ 4.  Because Mr. Zuech and his alleged role in this case have no contacts with Connecticut, he must be dismissed.

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of showing that the court has jurisdiction over the defendant."  *LucidRisk, LLC v. Ogden*, 615 F. Supp. 2d 1, 4 (D. Conn. 2009); *see also, e.g.*, *Adams v. Wex*, 34 F. Supp. 2d 128, 129 (D. Conn. 1999).  To determine personal jurisdiction over a non-domiciliary like Mr. Zuech in a case involving a federal question, the Court must engage in a two-step analysis.  *Am. Wholesalers Underwriting, Ltd. v. Am. Wholesale Ins. Grp., Inc.*, 312 F. Supp. 2d 247, 251 (D. Conn. 2004).

First, a court must look to Connecticut's long-arm statute to determine whether it reaches the defendant.  *See Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997) ("In diversity or federal question cases the court must look first to the long-arm statute of the forum state . . . .");  *LucidRisk, LLC*, 615 F. Supp. 2d at 5; *Greiner v. Simkovic*, No. 3:08-cv-190, 2008 WL 2064773, at *1 (D. Conn. May 13, 2008).  Second, if the statute does reach the defendant, then the court must decide "whether the defendants have 'certain minimum contacts with the forum state such that the maintenance of the suit in that forum does not offend traditional notions of fair play and substantial justice.'"  *See Am. Wholesalers Underwriting, Ltd.*, 312 F. Supp. 2d. at 252 (brackets omitted) (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)).

## A.   The Connecticut Long-Arm Statute Does Not Reach Mr. Zuech

Mr. Dhir has not and cannot establish that Mr. Zuech is subject to personal jurisdiction pursuant to Connecticut's long-arm statute.  Connecticut's Long-Arm Statute, Conn. Gen. Stat. Ann. § 52-59b, which provides in relevant part:

4

> (a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent:  (1) Transacts any business within the state; (2) commits a tortious act within the state . . . ; (3) commits a tortious act outside the state causing injury to person or property within the state . . . ., if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state . . . .

Conn. Gen. Stat. Ann. § 52-59b (West 2016).

Mr. Dhir has not made any showing that Mr. Zuech had any contacts with the State of Connecticut, whatsoever.  First, Mr. Dhir has not alleged that Mr. Zuech has worked or transacted business in the State of Connecticut, nor could he since the term "transacts business" is "not broadly interpreted in Connecticut."  *See LucidRisk, LLC*, 615 F. Supp. 2d at 5 (internal quotation marks omitted).

> For example, the negotiation of contracts, standing alone, does not constitute "transacting business" in Connecticut.  Similarly, the transmission of communications between an out-of-state defendant and a plaintiff within the jurisdiction does not, by itself, constitute the transaction of business in a forum state.

*Id.* (citation omitted).  Mr. Dhir also has not alleged a single purposeful business transaction that Mr. Zuech conducted in Connecticut.  Nor has Mr. Dhir alleged that Mr. Zuech engaged in any Connecticut-related activity, let alone that he invoked the benefits and protection of Connecticut's laws.  Mr. Dhir alleges only that at one point in time VAM maintained an office in Greenwich, Connecticut, but he concedes that Mr. Zuech (and the other two individual defendants) worked out of the New York City offices of VAM and The Carlyle Group, not VAM's Connecticut office.  *See* Compl. ¶ 7.

Second, Mr. Dhir does not allege any tortious act that Mr. Zuech committed within the State of Connecticut.  *See Caro v. Fid. Brokerage Servs.*, No. 3:14-cv-01028, 2015 WL 1975463,

at *12 (D. Conn. Apr. 30, 2015) ("For purposes of § 52-59b(a)(2) analysis, a plaintiff's injury must arise from a tortious act committed by a defendant within the state."); *Greiner*, 2008 WL 2064773, at *2.  Indeed, the only alleged acts attributed to Mr. Zuech in the Complaint were in relation to his work in New York City.  *See e.g.*, Compl. ¶¶ 38, 50.  Furthermore, although Mr. Dhir claims that he, a Connecticut resident, suffered an injury as a result of Mr. Zuech's conduct outside of the state, this is not sufficient.  *See Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014) ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."); *Caro*, 2015 WL 1975463, at *15 ("where all of the critical events occurred" determine situs of plaintiff's injury (internal quotation marks omitted)); *Greene v. Sha-Na-Na*, 637 F. Supp. 591, 598 (D. Conn. 1986) (Connecticut resident's loss of business outside Connecticut insufficient to show situs of injury to be in Connecticut).  There is also nothing in Mr. Dhir's Complaint to suggest that Mr. Zuech should reasonably expect his actions to have consequences in the State of Connecticut.

Lastly, Mr. Dhir has made no allegations that Mr. Zuech resides or owns real property in the State of Connecticut.  In fact, Mr. Zuech resides in the Commonwealth of Pennsylvania and has never owned real property in Connecticut.  *See* Zuech Aff. ¶¶ 2–3.  Accordingly, Mr. Dhir has not met his burden to establish that Connecticut's long-arm statute reaches Mr. Zuech.

### B.   Asserting Personal Jurisdiction Over Mr. Zuech in Connecticut Does Not Comport with the Requirements of Due Process.

As Connecticut's long arm statute does not reach Mr. Zuech, the analysis should end there.  *LucidRisk*, 615 F. Supp. 2d at 8.  Even if Mr. Zuech were subject to the long arm statute, asserting personal jurisdiction over Mr. Zuech in the State of Connecticut would violate due process.  This due process analysis involves the "minimum contacts" inquiry and the

"reasonableness" inquiry.  *See id.*; *Estate of Martinez v. Yavorcik*, 455 F. Supp. 2d 115, 123 (D. Conn. 2006).

 With respect to minimum contacts, for the same reasons that Mr. Zuech is not subject to the long arm statute, minimum contacts are not present here.  As discussed above, Mr. Dhir has failed to meet his burden to establish that Mr. Zuech has *any* connections whatsoever with the State of Connecticut.  Accordingly, Mr. Dhir has alleged no facts to suggest that Mr. Zuech purposefully availed himself of the privileges and benefits of Connecticut.[4]  *See, e.g.*, *Savin v. Ranier*, 898 F.2d 304, 307 (2d Cir. 1990); *Caro*, 2015 WL 1975463, at *15.

 In addition to minimum contacts, the court must consider whether the assertion of personal jurisdiction over Mr. Zuech would comport with traditional notions of fair play and substantial justice, or whether it is reasonable under the circumstances of the particular case.  In light of Mr. Zuech's lack of contacts with the State of Connecticut, reasonableness has not been established here either.  *See LucidRisk*, 615 F. Supp. 2d at 8; *see supra* p. 5-6.  Accordingly, subjecting Mr. Zuech to suit in Connecticut would be contrary to traditional notions of fair play and substantial justice.

## II. Mr. Dhir Fails To State a Claim for Retaliatory Discharge

 To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  A claim is facially plausible if "the plaintiff pleads factual content that allows the court

---

[4] It is not enough that Mr. Dhir is himself a Connecticut resident.  A "defendant's relationship with a [resident] plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 134 S. Ct. at 1123.  "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.*at 1122.

to draw the reasonable inference that the defendant is liable for the misconduct alleged."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The complaint must offer more than "labels and
conclusions," "a formulaic recitation of the elements of a cause of action," or "naked
assertion[s]" devoid of "further factual enhancement."  *Twombly*, 550 U.S. at 555, 557.  In
deciding motions under either Rule 12(b)(2) and (6), a court must accept the material facts
alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and
decide whether it is plausible that the plaintiff has a valid claim for relief.  *Iqbal*, 556 U.S. at
678–79; *Twombly*, 550 U.S. at 555–56; *Hunter v. New York City Health & Hosp. Corp.*, No. 13–
CV–2659 (SLT)(VVP), 2015 WL 1527646, at *6 (E.D.N.Y. Mar. 31, 2015).

      The first three counts of the Complaint allege that Mr. Dhir's termination violated three
federal and state statutes prohibiting retaliatory discharge of so-called "whistleblowers": (1) the
Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A (Count One); (2) the Dodd-Frank Wall Street
Reform and Consumer Protection Act of 2010, 15 U.S.C. § 78u-6(h)(1)(B) (Count Two); and
(3) the Connecticut Whistleblower Statute, Conn. Gen. Stat. Ann. § 31-51m(b) (Count Three).
Mr. Dhir failed to satisfy the statutory pre-requisites to filing a Sarbanes-Oxley claim against Mr.
Zuech and The Carlyle Group under the Sarbanes-Oxley Act.  Mr. Dhir also fails to allege that
he engaged in protected activity for purposes of the Connecticut Whistleblower Statute.

    **A.**    **Mr. Dhir Failed To Exhaust His Administrative Remedies as To His
             Sarbanes-Oxley Act Claim Against Mr. Zuech and The Carlyle Group**

      The Sarbanes-Oxley Act requires a plaintiff to exhaust administrative remedies before
filing a retaliation suit.  18 U.S.C. § 1514A(b).  "Before an employee can assert a cause of action
in federal court under the Sarbanes–Oxley Act, the employee must file a complaint with the
Occupational Safety and Health Administration ("OSHA") and afford OSHA the opportunity to
resolve the allegations administratively."  *Willis v. VIE Fin. Grp., Inc.*, No. Civ.A. 04-435, 2004

WL 1774575, at *3 (E.D. Pa. Aug. 6, 2004) (footnote omitted).  "[F]ederal courts that have considered the issue have consistently held that a plaintiff may not sue a particular defendant in federal court, or assert a particular claim, unless he has exhausted his administrative remedies *as to that defendant* or claim."  *Smith v. Corning, Inc.*, No. 06-CV-6516 CJS, 2007 WL 2120375, at *2 (W.D.N.Y. July 23, 2007) (emphasis added) (citing cases); *see also Smith v. Psych. Sol. Inc.*, No. 08-cv-3, 2009 WL 903624, at *8 (N.D. Fla. Mar. 31, 2009); *Levi v. Anheuser-Busch Co.*, No. 08-00398-CV-W-RED, 2008 WL 4816668, at *3 n.4 (W.D. Mo. Oct. 27, 2008), *aff'd per curiam*, 360 F. App'x 708 (8th Cir. 2010); *Bozeman v. Per-Se Tech. Inc.*, 456 F. Supp. 2d 1282, 1357–58 (N.D. Ga. 2006).

Mr. Dhir failed to identify Chris Zuech or The Carlyle Group as defendants in his complaint to the Department of Labor.  *See* Dep't of Labor Compl. at 1.  Accordingly, Mr. Dhir "failed to afford OSHA the opportunity to resolve [Mr. Dhir's] allegations through the administrative process" as to these Defendants.  *Hanna v. WCI Cmtys., Inc.*, No. 04-80595, 2004 U.S. Dist. LEXIS 25652, at *8 (S.D. Fla. Nov. 18, 2004).  Furthermore, even if the Court assumed Mr. Dhir's complaint to the Department of Labor put Mr. Zuech and The Carlyle Group on notice of potential claims, "that notice has no consequence as to whether OSHA was placed on notice that it was required to investigate [Mr. Zuech's and The Carlyle Groupde's] actions in this case."  *Id.*  By failing to name Mr. Zuech or The Carlyle Group in his administrative complaint, Mr. Dhir cannot assert his federal claims against either defendant in this action.  *Id.* at 9; *Corning*, 2007 WL 2120375, at *2; *accord Bridges v. McDonald's Corp.*, No. 09-CV-1880, 2009 WL 5126962, at *3 (N.D. Ill. Dec. 21, 2009) (dismissing Sarbanes-Oxley claim as to defendant plaintiff did not specifically name as a respondent in administrative complaint); *see also Bridges*, 2009 WL 5126962, at *3 (citing cases).

### B.    Mr. Dhir Did Not Engage in Protected Activity for Purposes of the Connecticut Whistleblower Statute

Count Three alleges that Mr. Dhir was discharged for engaging in "protected activity," in violation of the Connecticut Whistleblower Statute, Conn. Gen. Stat. Ann. § 31-51m(b).  Section 31-51(m) provides (in relevant part):

> No employer shall discharge, discipline or otherwise penalize any employee because [] the employee, or a person acting on behalf of the employee, reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation *to a public body*[.]

Conn. Gen. Stat. Ann. § 31-51m(b) (emphasis added).  The statute further defines "public body" as "any public agency," or "any federal agency."  *Id.* § 31-51m(a)(4).  A corporation that was not created by the government and which does not receive government funding is not a "public agency" for purposes of the Connecticut Whistleblower Statute.  *Karagozian v. Luxottica Retail N. Am.*, No. 3:13-cv-1028 (VAB), 2015 WL 7451151, at *6 (D. Conn. Nov. 23, 2015).  Thus, in order to state a claim under the Connecticut Whistleblower Statute, Mr. Dhir must allege facts that, if true, establish that he was terminated because he reported a suspected violation of law *to a public body*, not just VAM personnel.  Mr. Dhir does not meet this burden.

Mr. Dhir asserts in the Complaint that in the Fall of 2014, he complained only to VAM's management about Viridian's freight position.  Compl. ¶¶ 43, 49.  At no point does he claim that he reported his concerns outside of VAM before his termination in early 2015.  To the contrary, he alleges he first reported purported wrongdoing to a public agency on July 24, 2015—several months *after* VAM terminated his employment.  Compl. ¶¶ 16, 54.  As a matter of law, therefore, Count Three does not allege a key element of an offense under the Connecticut Whistleblower Statute and should be dismissed.

III.    **Mr. Dhir's Bonus-Related Claims Should Be Dismissed**

Mr. Dhir further asserts a number of claims relating to the fact he did not receive a bonus for his performance in 2014. Specifically, Mr. Dhir suggests that, despite the terms of the Employment Agreement making the award of any bonus discretionary, Mr. Gilbert orally promised Mr. Dhir that he would receive a non-discretionary bonus in the amount of a "double-digit" percentage of the profits over $2 million he produced for Viridian. Compl. ¶ 53. Mr. Dhir thus alleges VAM's decision not to award him a bonus for 2014 constituted a breach of contract, violation of New York and Connecticut wage statutes, and fraud. As set forth below, the purported oral promise does not give rise to any viable cause of action.

A.    **The New York Choice of Law Provision in Mr. Dhir's Employment Agreement Governs This Dispute**

As a threshold matter, the common law elements of the bonus-related claims are governed by substantive state law. Mr. Dhir's employment agreement includes a New York choice of law provision: "This Agreement and the rights and obligations of the Parties hereunder shall be governed in all respects, including validity, interpretation and effect, by the laws of the State of New York." Employment Agreement at 18.[5] "A federal court sitting in diversity or adjudicating state law claims that are pendent to a federal claim must apply the choice of law

---

[5] For purposes of a Rule 12(b) motion, the Court may consider the complaint, documents attached as exhibits to or incorporated by reference into the complaint, and any other documents that are "integral" to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Here, the Court may, consider two documents referenced in the Complaint: (1) Mr. Dhir's Employment Agreement (Ex. 1); and (2) Mr. Dhir's Department of Labor Complaint (Ex. 2). Mr. Dhir's employment agreement is integral to the Complaint insofar as he states multiple claims relating to his "employment terms" and "compensation package." Compl. ¶¶ 7, 53, 74–88. The Complaint further relies on Mr. Dhir's Complaint to the Department of Labor to establish both that Dhir exhausted administrative remedies and timely filed the instant Complaint. *Id.* ¶ 16. Both documents should be considered in deciding the present motion. *See, e.g.*, *TicketNetwork, Inc. v. Darbouze*, No. 3:15-cv-237 (VAB), ___ F. Supp. 3d ___, 2015 WL 5595486, at *2 n.4 (D. Conn. Sept. 22, 2015).

rules of the forum state." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012) (per curiam) (internal quotation marks omitted).

Under Connecticut law, contractual choice of law provisions will be enforced if made in good faith. *Elgar v. Elgar*, 679 A.2d 937, 942, 238 Conn. 839, 848 (Conn. 1996) (enforcing choice of law provision as provision not obtained by improper means); *accord Odyssey Reinsurance Co. v. Cal-Regent Ins. Servs. Corp.*, 123 F. Supp. 3d 343, 350 (D. Conn. 2015). There are no allegations of bad faith in the Complaint. The New York choice of law provision in Mr. Dhir's Employment Agreement thus applies to Mr. Dhir's claims for breach of contract and fraud regarding his bonus. Such claims fall squarely within the choice of law provision, which provides that New York law governs the Employment Agreement and all rights and obligations of the parties under the agreement. *Travel Servs. Network, Inc. v. Presidential Fin. Corp.*, 959 F. Supp. 135, 146–47 (D. Conn. 1997).

### B.      Mr. Dhir Fails To State a Claim for Breach of Contract

Count Four asserts a claim for breach of contract, suggesting "Defendants induced plaintiff to stay during 2014 by telling him that, if he stayed, they would pay him a bonus that was a double-digit percentage of his profits," and relying on that promise, "plaintiff remained in defendants' employment," but did not receive a bonus for 2014. Compl. ¶¶ 76–78. Regardless of whether the Court construes Mr. Dhir's Complaint to allege a breach of his employment agreement, or a breach of a subsequent oral promise for a specific bonus in 2014, New York law precludes Mr. Dhir's breach of contract claim.

First, the Offer Letter Plaintiff signed before joining VAM explicitly stated "[t]he amount of any *discretionary* bonus, *if any*, will depend upon *the Company's assessment* of your performance, the performance of VAM and the funds as a whole." Employment Agreement at 11 (emphasis added). An employee cannot sustain an action for breach of contract for failure

to pay a bonus where the terms of employment agreement make the award of any bonus a matter of the employer's discretion. *See, e.g.*, *Hunter v. Deutsche Bank AG, N.Y. Branch*, 866 N.Y.S.2d 670, 670, 56 A.D.3d 274, 274 (N.Y. App. Div. 2008); *Smalley v. Dreyfus Corp.*, 832 N.Y.S.2d 157, 162, 40 A.D.3d 99, 106 (N.Y. App. Div. 2007), *rev'd in part on other grounds*, 853 N.Y.S.2d 270, 10 N.Y.3d 55 (N.Y. 2008). Furthermore, "[l]anguage that bonuses would be contingent on criteria such as performance and profitability cannot be interpreted as a limitation on defendant's discretion, since doing so would render the clear language of discretion meaningless." *Hunter*, 866 N.Y.S.2d at 670, 56 A.D.3d at 274. The unambiguous terms of Mr. Dhir's employment agreement making the award of any bonus solely a matter of VAM's discretion thus bar any claim that failure to pay Mr. Dhir a bonus in 2014 constituted a breach of the employment agreement.

Second, "New York state courts have consistently held that a written discretionary bonus policy bars an action for an alleged oral bonus promise." *Buckman v. Calyon Sec. (USA) Inc.*, 817 F. Supp. 2d 322, 338 (S.D.N.Y. 2011); *see Delaney v. Bank of Am. Corp.*, 908 F. Supp. 2d 498, 517 (S.D.N.Y. 2012), *aff'd*, 766 F.3d 163 (2d Cir. 2014). In *Smalley*, for example, the court dismissed claims for breach of contract arising out of alleged oral promises to pay plaintiffs bonuses of "of at least 1.5 times their base salaries," and to share performance fees. 832 N.Y.S.2d at 162, 40 A.D.3d at 106. The court specifically found that the incentive compensation plan at issue, which provided that "the making, payment and amount of all awards hereunder shall be within the complete discretion of the Corporation acting through [its] officers," "render[ed] untenable" plaintiffs' claims for breach of contract arising out of any oral bonus promise. *Id.* (internal quotation marks omitted); *see Hunter*, 866 N.Y.S.2d at 670, 56 A.D.3d at

13

274.  Accordingly, the terms of the Offer Letter to Mr. Dhir making any bonus discretionary makes any subsequent oral promise for a bonus unenforceable.

Third, the Offer Letter provides that the terms of the Letter "cannot be changed except in a writing signed by the Company's Management Committee."  Employment Agreement at 12. The New York Statute of Frauds provides that

> [a] written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent.

N.Y. Gen. Oblig. Law § 15-301(1).  To avoid the effect of this provision, Mr. Dhir must show either partial performance or equitable estoppel.  *See Baraliu v. Vinya Capital, L.P.*, 765 F. Supp. 2d 289, 297 (S.D.N.Y. 2011).  However, "the key aspect of New York law is that, for either partial performance or equitable estoppel to apply and show an effective oral modification to the written contract, the conduct relied upon by the plaintiff to prove the modification must be 'not otherwise compatible with the agreement as written.'"  *Id.* at 298 (quoting *Indus. Window Corp. v. Fed. Ins.*, 609 F. Supp. 2d 329, 339 (S.D.N.Y. 2009)).  Mr. Dhir's performance here, "remain[ing] in defendants' employment," Compl. ¶ 77, is "equally consistent with his desire to continue to earn his compensation under the written [e]mployment [a]greement, as with the alleged oral modification."  *Tierney v. Capricorn Investors, L.P.*, 592 N.Y.S.2d 700, 702, 189 A.D.2d 629, 631 (N.Y. App. Div. 1993).  Thus, the no-oral modification clause of the Offer Letter controls, and Mr. Dhir's breach of contract claim fails as a matter of law.

### C.   Mr. Dhir Fails To State a Claim for Unpaid Wages

Early in his Complaint, Mr. Dhir asserts that "[t]his is a claim for unpaid wages" under Connecticut law or alternatively, New York law, but does not refer to either statute in the five enumerated causes of action.  *See* Compl. ¶¶ 5–6 (citing Conn. Gen. Stat. § 31-71a(3) and 12

N.Y.C.R.R. § 190).  Nor does Mr. Dhir articulate any factual allegations to support the conclusory legal allegation that VAM failed to pay Mr. Dhir compensation he was owed by law, leaving Defendants to speculate as to what "wages" Mr. Dhir feels remain unpaid.  *See id.*  The threadbare recitation of these statutes without any supporting factual allegations is insufficient to state a claim for relief.  *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, as a matter of law his claims under both wage statutes are barred.  "'[T]he classification of a compensation provision as wages under § 31–71a(3) requires the satisfaction of 3 factors: (1) the award of compensation must be non-discretionary, (2) the amount of the compensation must be non-discretionary, and (3) the amount of the bonus must be dependent on the employee's performance.'"  *McMahon v. Chubb Grp. of Ins.*, 553 F. App'x 85, 86-87 (2d Cir. 2014) (quoting *Datto Inc. v. Braband*, 856 F. Supp. 2d 354, 371 (D. Conn. 2012)).  The bonus provision here fails to satisfy any of the three factors.

Mr. Dhir's employment agreement made the award of a bonus and the amount of any bonus discretionary.  Employment Agreement at 11 ("The amount of discretionary bonus, if any . . . .").  Moreover, the amount of the bonus, if any, was dependent not just on Mr. Dhir's performance, but "the performance of VAM and the funds as a whole."  *Id.*  If a bonus is dependent in part on the performance of the employer or "any internal operating units and divisions," the bonus does not constitute wages for purposes of Section § 31–71a(3).  *McMahon*, 553 F. App'x at 87.

For the same reason, Mr. Dhir cannot state a claim for unpaid wages under New York law.  *See, e.g.*, *Duffy v. RMSCO, Inc.*, 825 N.Y.S.2d 861, 861, 34 A.D.3d 1285, 1286 (N.Y. App. Div. 2006) ("[T]he bonus was dependent, at least in part, on the financial success of [the

employer], and the bonus therefore did not constitute a wage within the meaning of Labor Law §
190(1)." (internal quotation marks omitted)); *accord Int'l Paper Co. v. Suwyn*, 978 F. Supp. 506,
514 (S.D.N.Y. 1997).

### D.       Mr. Dhir Fails To State a Claim for Fraud

The final count of the Complaint repeats the allegations of Count Four, asserting
Defendants fraudulently induced Mr. Dhir into remaining employed with VAM by promising to
pay a bonus for his 2014 performance.  Compl. ¶¶ 81–88.  Count Five fails to sufficiently allege
two elements of fraudulent inducement—intent to defraud and reasonable reliance—and is also
duplicative of the breach of contract count.

To prove fraud under New York law, the plaintiff must show "(1) the defendant made a
material false representation; (2) the defendant intended to defraud the plaintiff; (3) the plaintiff
reasonably relied upon the representation, and (4) the plaintiff suffered damages as a result of
such reliance."  *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d
Cir. 1996) (internal quotation marks omitted); *see also E. Point Sys., Inc. v. Steven Maxim, S2k,
Inc.*, ___ F. Supp. 3d ___, No. 3:13-cv-00215-VAB, 2015 WL 5595399, at *2 (D. Conn. Sept.
21, 2015) (articulating essentially the same standard under Connecticut law) (citing *Sturm v.
Harb Dev., LLC*, 298 Conn. 124, 2 A.3d 859, 872 (2010)); *Tatum v. Oberg*, No. 3:08-cv-1251
(JCH), 2009 WL 5066812, at *6 n.11 (D. Conn. Dec. 18, 2009) (elements of common law fraud
under New York law mirror those under Connecticut law).[6]  The allegations in the complaint fail
to satisfy the first, second, and third elements.

---

[6] As explained *supra* in Part I, pursuant to the contractual choice of law provision, New York
law governs Mr. Dhir's fraud claim.  However, Connecticut law, if applied, would likewise
require dismissal of Count Five of the Complaint.

First, to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b), a complaint asserting a cause of action for fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields v. CityTrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (internal quotation marks omitted). Mr. Dhir alleges that "[t]hroughout 2014" Mr. Gilbert told plaintiff "that his incentive compensation would be based on his individual performance at a competitive double-digit rate." Compl. ¶ 53. Mr. Dhir does not specify precisely when in 2014 or where Mr. Gilbert purportedly made such statements. The Complaint thus fails to allege a fraudulent misrepresentation with the particularity required by Rule 9(b). *See, e.g.*, *Lorber v. Winston*, 962 F. Supp. 2d 419, 446 (E.D.N.Y. 2013) (plaintiff failed to satisfy Rule 9(b) where complaint failed to "state when or where [the fraudulent] statements were made beyond that they apparently occurred 'sometime in 2004'"); *Tatum*, 2009 WL 5066812, at *3 (finding allegation that defendant made misrepresentation "'on several occasions in 2002 and 2003'" insufficient under Rule 9(b)); *see also Montanez v. D&D Auto, LLC*, No. 3:15-cv-397 (VAB), 2016 WL 1254199, at *9-10 (D. Conn. Mar. 29, 2016) (fraud claim dismissed for lack of particularity).

Second, courts "require plaintiffs to allege facts that give rise to a *strong inference* of fraudulent intent." *Shields*, 25 F.3d at 1128 (emphasis added); *accord Deutsche Asset Mgmt., Inc. v. Callaghan*, No. 01 Civ. 4426 CBM, 2004 WL 758303, at *10 (S.D.N.Y. Apr. 7, 2004). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields*, 25 F.3d at 1128; *accord E. Point Sys.*, 2015 WL 5595399, at *2. With respect to scienter, Mr. Dhir

merely alleges that Defendants "refused to pay him his incentive pay as agreed, knowing that they had no intention to do so."  Compl. ¶ 85.  Mr. Dhir offers *no* factual allegations in support of this circular conclusion, much less sufficient facts to support a *strong inference* of intent as required to state a claim for fraud.  *See Shields*, 25 F.3d at 1129; *Harrell v. Primedia, Inc.*, No. 02-cv-2893 (JSM), 2003 WL 21804840, at *2–3 (S.D.N.Y. Aug. 6, 2003).

Third, "where the terms of an unambiguous contract are inconsistent with the statements that form the basis of [a] claim, the claiming party could not have *reasonably* relied on those statements as a matter of law."  *Bader v. Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 415 (S.D.N.Y. 2011) (internal quotation marks omitted).  Mr. Dhir twice acknowledged in writing that the payment of any bonus was within VAM's discretion.  Thus Mr. Dhir could not reasonably rely on any alleged unconditional oral promise to pay a bonus.  *Id.*; *see also Kaplan v. Capital Co. of Am. LLC*, 747 N.Y.S.2d 504, 505, 298 A.D.2d 110, 111 (N.Y. App. Div. 2002) (finding plaintiff could not bring a claim for fraudulent inducement to recover bonus compensation where plaintiff acknowledged in writing that bonus compensation was discretionary).  As Mr. Dhir has failed to allege two of the four elements of fraud, the Court should dismiss Count Five.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that all claims against Mr. Zuech be dismissed; Count One be dismissed as to Mr. Zuech and The Carlyle Group; and Counts Three through Five and any statutory claims for unpaid wages be dismissed in their entirety.

18

Dated:  April 15, 2016                    Respectfully submitted,

                                          By: */s/ Vidya Atre Mirmira*
                                          Robert A. Van Kirk (*pro hac vice*)
                                          Vidya A. Mirmira (*pro hac vice*)
                                          WILLIAMS & CONNOLLY LLP
                                          725 Twelfth Street, N.W.
                                          Washington, DC 20005
                                          Telephone:  (202) 434-5000
                                          Facsimile:  (202) 434-5029
                                          E-mail:  rvankirk@wc.com
                                          E-mail:  vmirmira@wc.com

                                          Lawrence P. Postol
                                          CT Juris No. 03786
                                          CT Fed. Bar No. 03786
                                          SEYFARTH SHAW LLP
                                          975 F Street, N.W.
                                          Washington, DC 20004
                                          Telephone:  (202) 828-5385
                                          Facsimile:  (202) 641-9186
                                          E-mail:  lpostol@seyfarth.com

                                          *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2016, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which sent notification of such filing to the following:


Kristan Peters-Hamlin                   kpeters@petershamlinlaw.com



Respectfully submitted,
By: */s/ Vidya Atre Mirmira*
Robert A. Van Kirk (*pro hac vice*)
Vidya A. Mirmira (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029
E-mail:  rvankirk@wc.com
E-mail:  vmirmira@wc.com

Lawrence P. Postol
CT Juris No. 03786
CT Fed. Bar No. 03786
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, DC 20004
Telephone:  (202) 828-5385
Facsimile:  (202) 641-9186
E-mail:  lpostol@seyfarth.com

*Attorneys for Defendants*